UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HASSAN ABBAS,

                Plaintiff,

  -v-

ORRICK, HERRINGTON & SUTCLIFFE, LLP, *et uno*,

                Defendants.

No. 15-cv-1545 (RJS)
OPINION AND ORDER

---

RICHARD J. SULLIVAN, District Judge:

    Plaintiff Hassan A. Abbas brings this action for tortious interference against Defendants Orrick, Herrington & Sutcliffe LLP ("Orrick") and Richard A. Martin, Esq., who was previously a partner at Orrick.  Specifically, Plaintiff alleges that Defendants interfered with his business relationship with the law firm Handler Thayer LLP ("Handler Thayer") based on an e-mail sent by Defendant Martin on July 16, 2014 to Handler Thayer in relation to another action previously brought by Plaintiff against a defendant represented by Orrick.  Now before the Court is Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 18.)  For the reasons set forth below, the Court grants Defendants' motion to dismiss and orders that Plaintiff show cause as to why the Court should not sanction Plaintiff and require that he seek permission from the Court before making future filings in this action.

I. BACKGROUND[1]

Plaintiff Hassan A. Abbas is no newcomer to this Court. Indeed, this action for tortious interference relates to another case brought by Plaintiff in which Orrick represented one of the defendant banks. (*Midamines* Action, Doc. No. 1.) In that case, Plaintiff Abbas and a Congolese corporation, Midamines SPRL, for which Abbas is the sole corporate officer, brought claims against two banks, including KBC Bank NV ("KBC Bank") – represented by Orrick – relating to the banks' allegedly improper decisions to stop payments on two checks. On March 19, 2014, the Court granted defendants' motion to dismiss the *Midamines* Action, finding that a forum selection clause requiring litigation in Belgium was valid and enforceable. (*Midamines* Action, Doc. No. 50.)

Subsequently, Plaintiff Abbas and Midamines SPRL appealed the dismissal of the *Midamines* Action to the Second Circuit, and as part of that appeal filed a number of motions, including a motion to disqualify KBC Bank's counsel – Defendant Martin and his firm, Orrick – from representing KBC Bank in the appeal. (*Midamines* Appeal, Doc. No. 53.) In the appeal, Abbas – on behalf of himself and Midamines SPRL – alleged that Orrick's inadvertent inclusion of Abbas on a privileged e-mail was evidence that the bank intended to pursue a frivolous defense.

On July 16, 2014, the Second Circuit denied plaintiffs' motion to disqualify Martin and Orrick and granted KBC Bank's motion to seal, finding that the e-mail included by plaintiffs in their motion to disqualify Orrick was protected by the attorney work-product doctrine.

---

[1] The following facts are taken from the Complaint, filed on March 3, 2015 (Doc. No. 1 ("Compl.")) and from the public dockets of *Midamines SPRL Ltd. v. KBC Bank NV*, 12-cv-8089 (RJS) (S.D.N.Y.) ("*Midamines* Action"), Doc. No. 1) and *Midamines SPRL Ltd. v. KBC Bank NV*, 14-862-cv (2d Cir.) ("*Midamines* Appeal"), which are matters of public record, *see Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). In ruling on the motion, the Court has also considered Defendants' Memorandum of Law (Doc. No. 19 ("Mem.")), Plaintiff's Opposition (Doc. No. 22 ("Opp'n")), and Defendants' Reply (Doc. No. 24 ("Reply")).

(*Midamines* Action, Doc. No. 57.)  The Second Circuit also granted defendants' motion for sanctions against plaintiffs based on plaintiffs' "frivolous and vexatious conduct" and ordered that plaintiffs "shall pay the costs and reasonable attorneys' fees incurred by [Orrick] as a result of the motion to disqualify and motion to seal the documents, which was necessitated by the motion to disqualify."  (*Id*. at 2.)

As part of Orrick's subsequent efforts to collect on the Second Circuit's award of reasonable attorneys' fees, Defendant Martin sent an e-mail to Handler Thayer on July 16, 2014, informing the firm that "in the event Mr. Abbas does not pay our firm's costs and fees as ordered, [Orrick] will look to your firm to do so."  (Doc. No. 20, Declaration of Katherine L. Maco, dated April 30, 2015 ("Maco Decl."), Ex. C at 3.)  Martin's reasons for doing so were obvious:  in the months prior to the July 16, 2014 e-mail, Abbas had repeatedly held himself out as associated with Handler Thayer, and, in several filings with the Second Circuit, including his notice of appearance, had listed his Handler Thayer e-mail address.  (*Midamines* Appeal, Doc. No. 43.)  Plaintiff also used his Handler Thayer e-mail address in correspondence with Defendants.  (Maco Decl., Ex. A.)

On January 23, 2015, the Second Circuit granted KBC Bank's motion to compel payment of attorneys' fees and remanded to this Court "for the calculation of reasonable attorneys' fees that [Plaintiffs] must pay." [2]  (*Midamines* Action, Doc. No. 60.)  In that order, the Second Circuit also denied "all of [plaintiffs'] remaining motions," except any challenge to the reasonableness of the attorneys' fees amount, and noted that "[a]ppellants have filed a number of frivolous motions in this appeal," including the motion to disqualify and "some of the present motions." (*Midamines* Appeal, Doc. No. 222.)  The Second Circuit warned Abbas that "the continued filing of duplicative,

---

[2] In a separate Order issued today, the Court grants Orrick's request for reasonable attorneys' fees incurred in the *Midamines* Appeal.  (*Midamines* Action, Doc. No. 86.)

vexatious, or clearly meritless motions or other papers will result in the imposition of sanctions, which may include a leave-to-file sanction." (*Id.*)

On March 3, 2015, Plaintiff commenced this action against Orrick for tortious interference with his business relationship with Handler Thayer – based on the July 16, 2014 e-mail sent by Orrick to Handler Thayer to collect attorneys' fees on the motion to disqualify filed with the Second Circuit in the *Midamines* Appeal. (Doc. No. 1.) On April 30, 2015, Defendants filed this motion to dismiss Plaintiff's Complaint on the grounds that (1) Plaintiff is collaterally estopped from bringing this claim by virtue of the Second Circuit's ruling in the *Midamines* appeal, and (2) Plaintiff has failed to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 18.) The motion was fully briefed on June 12, 2015. (Doc. Nos. 19, 22, 24.)

II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is

4

inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570.

Although a court must generally construe the pleadings of a *pro se* litigant liberally, *see Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants."), a court is not obligated to do so where the *pro se* plaintiff is a licensed attorney, *see id.* at 101-02; *Truong v. Cuthbertson*, No. 15-cv-4268 (DLI) (LB), 2015 WL 4771852, at *1 (E.D.N.Y. Aug. 12, 2015) ("As Plaintiff is a former attorney, the Court is not obligated to read his pleadings liberally."); *Goel v. U.S. Dep't of Justice*, No. 03-cv-0579 (HB), 2003 WL 22047877, at *1 (S.D.N.Y. Aug. 29, 2003) (declining to construe pleadings liberally where *pro se* plaintiff was licensed attorney).  Here, Plaintiff is an attorney licensed in the state of Illinois who has repeatedly held himself out as a lawyer to this and other courts.  (*See, e.g.*, Opp'n at 1 ("Plaintiff Hassan A. Abbas, Pro Se, Attorney at Law"; *Midamines* Appeal, Doc. No. 222 at 1, 2.)  Accordingly, because Plaintiff is a licensed attorney, the Court declines to construe his pleadings with the degree of liberality typically given to *pro se* plaintiffs.

### III.  DISCUSSION

#### A.  Collateral Estoppel

As an initial matter, Defendants argue that Plaintiff is collaterally estopped from bringing this Complaint because the same issues have already been fully litigated in the Second Circuit.  A party invoking collateral estoppel must meet a four-part test and demonstrate that:  "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided

in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Indus. Risk Insurers v. Port Auth. of N.Y. & NJ*, 493 F.3d 283, 287 (2d Cir. 2007) (internal quotation marks omitted).

Here, Defendants argue that Plaintiff is collaterally estopped from raising his tortious interference claim because the same allegations have been raised against them in motions before the Second Circuit in the *Midamines* Appeal. Defendants' argument focuses mainly on Plaintiff's "Motion for Affirmative Relief" with the Second Circuit, in which, among other claims, Plaintiff argued that the same July 16, 2014 e-mail constituted "harassment" and "an attempt to unlawfully extract costs" which "caused permanent damage to [Plaintiff's] Of Counsel relationship with Handler Thayer." (*Midamines* Appeal, Doc. No. 201 at 5.)

Although the Court agrees that Plaintiff's motion for affirmative relief raises many of the same arguments that are included in this Complaint, the Second Circuit denied Abbas's motion for affirmative relief in a single order that covered several motions without any explanation of the basis for the denial. The Second Circuit stated only that it was denying "all of [plaintiffs'] remaining motions," with the exception of a potential challenge to the reasonableness of the attorneys' fees amount, and that "[a]ppellants have filed a number of frivolous motions in this appeal," including the motion to disqualify and "some of the present motions." (*Midamines* Appeal, Doc. No. 222.) The court did not, however, identify which motions it considered frivolous, nor did it specifically address the motion for affirmative relief. Based on this summary denial, it is not clear whether the issue of Plaintiff's tortious interference claim was *actually* litigated and decided in that proceeding as required for collateral estoppel. Indeed, the Second Circuit's order took no position as to whether Plaintiff might be able to bring a separate tortious

6

interference claim on the same facts.  Accordingly, because the Second Circuit's denial of Plaintiff's numerous motions in the *Midamines* Appeal does not provide sufficient detail to determine whether the claims brought in this Complaint were actually litigated and decided, much less whether Plaintiff had a "full and fair opportunity to litigate" these claims and whether their resolution was "necessary to support a valid and final judgment on the merits," the Court concludes that Plaintiff is not collaterally estopped from bringing this Complaint.  Nevertheless, a review of Plaintiff's claims on the merits leads to the inescapable conclusion that Plaintiff has failed to state a claim pursuant to Rule 12(b)(6).

B.  Failure to State a Claim Pursuant to 12(b)(6)

Plaintiff alleges that Defendants' e-mail on July 16, 2014 constituted intentional interference with his business relations with Handler Thayer.  Under New York law,[4] a plaintiff bringing a claim of tortious interference must allege facts to plausibly show that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).  Although both parties accept that Plaintiff had a business relationship with Handler Thayer, Defendants argue that the last three of these four elements are not plausibly alleged in the Complaint.  For the reasons set forth below, the Court agrees.

---

[4] Given that both parties rely on New York law in their submissions, the Court applies New York law to Plaintiff's claims.  *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12-cv-7908 (PAE), 2013 WL 2631043, at *2 (S.D.N.Y. June 11, 2013) ("[T]he Court applies New York law for both plaintiffs, because all parties apply New York law in their submissions:  Where "[t]he parties' briefs assume that New York law controls . . . such 'implied consent . . . is sufficient to establish choice of law.'" (quoting *Wolfson v. Bruno,* 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011))); c*f. Celle v. Filipino Reporter Enterp. Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of New York libel law, all are deemed to have consented to its application.").

1. Interference with Business Relations

Under New York law, a plaintiff bringing a claim of tortious interference must "demonstrate direct interference with a third party, that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 523 (S.D.N.Y. 2009) (quoting *Black Radio Network, Inc. v. NYNEX Corp.*, 96-cv-4138, 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000)); *see also Connolly v. Wood-Smith*, No. 11-cv-8801 (DAB) (JCF), 2014 WL 1257909, at *4 (S.D.N.Y. Mar. 27, 2014) ("This cause of action has a 'limited scope.' The defendant's interference must be direct. The defendant must target some activities toward the third party and convince the third party not to enter into a business relationship with the plaintiff." (alteration, citations, and internal quotation marks omitted)).

The only contact between Defendants and Handler Thayer that Plaintiff identifies – the July 16, 2014 e-mail – is clearly insufficient to establish "direct interference" as the term has been used in tortious interference cases. *See, e.g.*, *Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 910 N.Y.S.2d 765, 2010 WL 2519631, at *8 (Sup. Ct. 2010) (allegation that one firm sent letters to another firm threatening disqualification because of hiring of plaintiff was insufficient to state claim for tortious interference), *aff'd*, 915 N.Y.S.2d 239 (1st Dept. 2011). In no way did the July 16 e-mail convince, or even attempt to convince, Handler Thayer "not to enter into a business relationship" with Plaintiff. To the contrary, the e-mail, on which Plaintiff was copied, merely informed Handler Thayer that Plaintiff had a judgment against him for fees and costs and advised the firm that "in the event Mr. Abbas does not pay our firm's costs and fees as ordered, we will

look to your firm to do so."[5]  (Maco Decl., Ex. C at 3.)  Nothing in this e-mail evinces an effort to convince Handler Thayer to end its relationship with Plaintiff.  Indeed, the e-mail does not express any opinion on Handler Thayer's business relationship with Plaintiff.  Accordingly, the Court has no difficulty concluding that Plaintiff's Complaint does not satisfy the second element of a tortious interference claim.

2. Wrongful Conduct

With respect to the next element of a tortious interference claim – that the defendant "acted "for a wrongful purpose or used dishonest, unfair, or improper means" – "'[w]rongful means' includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure, but more than simple persuasion is required." *Snyder v. Sony Music Entm't, Inc.*, 684 N.Y.S.2d 235, 239 (Sup. Ct. 1999); *see also Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 337 (E.D.N.Y. 2014) (same).  Some courts have stated that "[a] cause of action does not lie absent an allegation that the action complained of was motivated solely by malice or to inflict injury by unlawful means rather than by self-interest or other economic considerations." *I.S. Sahni, Inc. v. Scirocco Fin. Grp., Inc.*, No. 04-cv-9251 (RMB) (RLE), 2005 WL 2414762, at *5 (S.D.N.Y. Sept. 28, 2005) (quoting *Kramer v. Pollock-Pollock Found.*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995)); *see also Cerberus Capital Mgmt., L.P. v. Snelling & Snelling, Inc.*, No. 60045/05, 2005 WL 4441899, at *7 (N.Y. Sup. Ct. Dec. 19, 2005) ("[T]he complaint contains nothing indicating the . . . defendants acted beyond mere self-interest or other economic considerations.  This is insufficient to support a claim

---

[5] In so far as Plaintiff's Complaint cites later messages in the same July 16, 2014 e-mail chain (Opp'n at 3-4), the Court notes that Plaintiff himself copied Handler Thayer on his response to Defendant Martin's original e-mail to the firm.  Thus, any subsequent e-mails sent by Defendant Martin were responses to Plaintiff's own messages copying Handler Thayer.

for tortious interference with prospective business relations."). In other words, "to constitute the kind of 'wrongful means' that will support Plaintiff's claim for tortious interference, one of the following must be true: (1) that conduct must amount to an independent crime or tort; (2) that conduct must have been taken solely out of malice; or (3) that conduct must amount to 'extreme and unfair' economic pressure." *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008), *aff'd*, 321 F. App'x 58 (2d Cir. 2009). Finally, the Second Circuit has noted that this standard is demanding because "a plaintiff's mere interest or expectation in establishing a contractual relationship must be balanced against the 'competing interest of the interferer.'" *Catskill Dev., L.L.C.*, 547 F.3d at 132 (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980)).

Here, Plaintiff has not alleged any facts to show that Defendants employed wrongful means in sending the e-mail to Handler Thayer. Indeed, while Plaintiff focuses his theory on the idea that Defendants applied "economic pressure" on Handler Thayer, he alleges no facts to indicate that Defendants' e-mail was motivated by any intent to harm Plaintiff, rather than solely by Defendants' economic interest in collecting on their judgement against Plaintiff in the Second Circuit. Although Plaintiff conclusorily states in his Complaint that Defendants' conduct was "egregious, malicious and vindictive" and that Martin was "motivated by malice" and by "bad faith" (Compl. ¶¶ 7, 8), these conclusory assertions, unsupported by any facts, are clearly insufficient. *See, e.g.*, *Snyder*, 684 N.Y.S.2d at 239 (calling adversary firm to tell them that attorney was practicing outside of his affiliation with the firm insufficient to show wrongful means). Nor did Defendants' attempt to collect money to which the Second Circuit found them entitled constitute "extreme and unfair economic pressure." The tone of the e-mail itself is purely professional, as Defendants merely seek reimbursement from Handler Thayer for the attorneys'

fees that the Second Circuit ordered Plaintiff to pay.  Based on its review of the July 16, 2014 e-mail, the Court agrees with Defendants that the e-mail appears to be motivated by Defendants' justifiable economic self-interest and not, as Plaintiff claims, by any malice or bad faith.

Accordingly, because Plaintiff's Complaint does not include any facts to support his conclusory statements that the e-mail was sent out of malice and bad faith, the Court concludes that the Complaint does not satisfy the third element of a tortious interference claim.

### 3. Injury to the Business Relationship

The fourth element for a tortious interference claim requires Plaintiff to "'demonstrate *both* wrongful means *and* that the wrongful acts were the proximate cause' of the alleged injury." *Catskill Dev., L.L.C.*, 547 F.3d at 133 (emphasis in original) (quoting *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171-72 (2d Cir. 2004)); *see also Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 498 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003) ("[T]he third party's breach must have been caused by the defendant, meaning that the breach would not have occurred but for the defendant's acts.").

Here, Plaintiff has once again alleged no facts to support his conclusory assertion that Defendants' e-mail to Handler Thayer was the cause of the firm's termination of its relationship with him.  Plaintiff simply states that his relationship with Handler Thayer "would not have been terminated and would still be intact today, but for" the July 16, 2014 e-mail.  (Compl. ¶ 15.)  Such a conclusory statement – unsupported by any specific facts – is insufficient to plausibly allege proximate causation.  *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 413 (S.D.N.Y. 2009) (finding "general conclusory assertion" insufficient to adequately allege fourth element of tortious interference claim), *aff'd*, 387 F. App'x 72 (2d Cir. 2010); *see also Snyder*, 684 N.Y.S.2d at 239 (plaintiff failed to show causation where relationship with firm was already in jeopardy).

Accordingly, the Court finds that the Complaint does not satisfy the fourth element of a tortious interference claim.

### C. Sanctions

A court may "impose sanctions where the conduct of the sanctioned litigant or attorney evinces bad faith or an egregious disrespect for the Court or judicial process." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013). One of the most common reasons for imposing sanctions is "patently frivolous legal argument." *Id.* at 69. Under Rule 11(b) of the Federal Rules of Civil Procedure, a party may not present a pleading to the court for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). A court may impose "an appropriate sanction" on any party who violates Rule 11(b). Fed. R. Civ. P. 11(c)(1). Moreover, the Second Circuit has specifically held that a court may impose sanctions against *pro se* attorneys. *Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992) (finding that 28 U.S.C. § 1927 allows for the imposition of sanctions against *pro se* attorneys); *see also Malley v. N.Y.C. Bd. of Educ.*, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) ("The fact that a litigant appears *pro se* does not shield him from Rule 11 sanctions.").

In the underlying *Midamines* Action, both this Court and the Second Circuit warned Plaintiff that additional frivolous motions could result in sanctions. On January 23, 2015, the Second Circuit stated that "the continued filing of duplicative, vexatious, or clearly meritless motions or other papers will result in the imposition of sanctions." (*Midamines* Action, Doc. No. 60.) And in a February 3, 2015 Order in the *Midamines* Action, the Court also cautioned Plaintiff that further "duplicative, vexatious, [and] clearly meritless" filings could result in sanctions. (*Midamines* Action, Doc. No. 65.)

Despite these warnings, Plaintiff filed this meritless action in an apparent attempt to harass Orrick. Plaintiff's entire Complaint is based on one e-mail sent by Orrick to Handler Thayer as part of its effort to collect attorneys' fees that the Second Circuit had ordered Plaintiff to pay. As noted above, the Complaint does not come close to satisfying the standard for a tortious interference claim as it fails to sufficiently allege facts to satisfy three of the four required elements. Rather, it seems designed, like many of Plaintiff's previous motions in the *Midamines* Action, to prolong litigation and to continue to harass Orrick based on the firm's representation of a defendant bank in the *Midamines* Action. As such, the Court has little difficulty concluding that this Complaint constitutes yet another "vexatious" and "clearly meritless" filing by Plaintiff.

Based on Plaintiff's actions before this Court and the Second Circuit, the Court is inclined to impose monetary sanctions on Plaintiff and to require that he seek permission from the Court before making any future filings. However, as Plaintiff has not previously received notice of sanctions in this particular action, the Court must first give Plaintiff an opportunity to be heard as to why sanctions should not be ordered. *See Truong v. Hung Thi Nguyen*, 503 F. App'x 34, 36 (2d Cir. 2012) (noting that sanctioned party must have notice of possible sanctions based on "specific conduct in the present proceeding" (internal quotation marks omitted)); *see also* Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction . . . ."). Accordingly, given Plaintiff's pattern of making frivolous arguments before both this Court and the Second Circuit, the Court orders Plaintiff to show cause as to (1) why he should not be required to pay Defendants' reasonable attorneys' fees and costs in this meritless action and (2) why the Court should not enjoin Plaintiff from making additional filings in this action "without first obtaining leave of the district court." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 25 (2d Cir. 1986).

## IV. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss the Complaint with prejudice is GRANTED. IT IS FURTHER ORDERED THAT Plaintiff must (1) file a written submission by April 1, 2016 and (2) appear for a hearing on April 22, 2016 at 11:30 a.m. in Courtroom 905 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York, to show cause as to why the Court should not impose financial sanctions on him and require that he seek leave from the Court before making future filings. The Clerk of the Court is respectfully directed to terminate the motion located at docket number 18 and to close this case.

SO ORDERED.

Dated:     March 16, 2016
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-16-16