G4CAAABBC                    Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    HASSAN A. ABBAS, ESQ.,

4                   Plaintiff,

5             v.                          15 CV 1545 (RJS)

6    ORRICK, HERRINGTON SUTCLIFFE,
     LLP and RICHARD A. MARTIN,
7    ESQ.,

8                   Defendants.

9    ------------------------------x
                                          New York, N.Y.
10                                        April 12, 2016
                                          8:50 a.m.
11
     Before:
12
                        HON. RICHARD J. SULLIVAN,
13
                                          District Judge
14
                              APPEARANCES
15
     HASSAN ABBAS, ESQ., PRO SE
16
     ORRICK, HERRINGTON & SUTCLIFFE, LLP
17        Attorneys for Defendants
     BY:  KATHERINE L. MACO
18

19

20

21

22

23

24

25

```
1                (Case called)

2                THE COURT:  Have a seat.  Thank you.

3                All right.  It is now 9:15.  We scheduled this, or

4    moved this conference to nine o'clock because I unfortunately

5    have a funeral to go to.  So Mr. Abbas called and said he's

6    running late, that the weather and traffic have conspired to

7    keep him from here but it's getting tricky now.  So let me just

8    hear from counsel.

9                MR. ABBAS:  Good morning, your Honor.

10               THE COURT:  OK.  Mr. Abbas, come on in.

11               MR. ABBAS:  I apologize for the delay.  I was stuck in

12   traffic.

13               THE COURT:  OK.  Come to the front table.

14               Let's take appearances for plaintiff representing

15   himself.  Would you state your name for the record for the

16   court reporter.

17               MR. ABBAS:  My name is Hassan Abbas.

18               THE COURT:  OK.  Good morning.  And for the defendant?

19               MS. MACO:  Morning, your Honor.

20               Katherine Maco, from Orrick Herrington, on behalf of

21   the defendants.

22               THE COURT:  All right.  Good morning.

23               OK.  We're here in connection with the order and

24   opinion that I issued back on, I guess it was March 16

25   directing Mr. Abbas to make a submission and to appear as to
```

G4CAAABBC                    Conference

1    why he shouldn't be sanctioned and why there shouldn't be a

2    filing injunction against him based on what I deem to be a

3    frivolous suit and given the Second Circuit's conclusion that

4    there had been a history and a pattern of filing frivolous

5    motions in the related action that went up on appeal.  And so I

6    now have a submission from Mr. Abbas.

7              I didn't make the defendants respond, so have you seen

8    Mr. Abbas' submission?

9              MS. MACO:  We have.

10             THE COURT:  Is there anything you'd like to say in

11   response?

12             MS. MACO:  Your Honor, the only thing that I'll note

13   is that it seems to be just another instance of Mr. Abbas

14   failing to actually respond to the issue that is the heart of

15   your Honor's request.  It seems to be his mission is more

16   related to rearguing the merits of Mr. Abbas' tortious

17   interference claim that your Honor decided and not in fact

18   responsive to your Honor's request to show cause why sanctions

19   in this case should not be issued.

20             And I think to the extent that there's reargument, I

21   think it's not responsive and shouldn't be considered and I

22   think that is --

23             THE COURT:  Well, with respect to the merits, again, I

24   think I was very clear in my ruling.  There is one e-mail which

25   was then I guess compounded with a series of CC and forwarded

1   e-mails by Mr. Abbas but there's really one e-mail by

2   defendants to the law firm.  And for the reasons set forth in

3   my opinion, I'm not revisiting that.  The issue really with

4   respect to the sanctions motion is what is it going to take to

5   prevent future and further frivolous motions?  That's really

6   the issue.

7            And so let me ask you, Ms. Maco, are you concerned or

8   worried that there is going to be more after this?

9            MS. MACO:  We are, your Honor.  And in fact I'll just

10  note a couple things that have happened since the filings in

11  this related to motions to dismiss.  Two particular things, one

12  of which your Honor may not be aware of.  At the same time that

13  Mr. Abbas filed a tortious interference action he also filed

14  another case in the New York state courts and since --

15           THE COURT:  Against whom?

16           MS. MACO:  Against KBC.  And it was styled as a motion

17  for summary judgment in lieu of complaint that sought payment

18  of the two bank checks that were at issue in the original of

19  these actions before your Honor.  And since the time of the

20  underlying briefing in this case in early February that matter

21  came to a conclusion when we had our hearing before the Justice

22  Braun, New York state Supreme Court.  And he read an order onto

23  the record in which he dismissed the action.  And he also

24  issued a warning to Mr. Abbas and Midamines as well, that

25  plaintiff should be mindful of the fact that they've already

1    been warned in federal court and could take this a notice of

2    the possibility that if another meritless case with merit

3    claims request are asserted in another action or any further

4    motion, the plaintiff could be subjected to sanctions.

5              And I have that form order for the Court if the Court

6    would like to receive a copy.

7              THE COURT:  Sure.  You can hand it up.  It's a public

8    document, so no problem in handing up a copy.

9              You've seen this, Mr. Abbas, I assume?

10             MR. ABBAS:  I'm seeing this for the first time.

11             THE COURT:  This is a case in which you are a party.

12             MR. ABBAS:  Yes, but this document is the first time

13   I've seen it, your Honor.

14             THE COURT:  Well, you are not getting court documents

15   in a case in which you are the plaintiff?

16             MR. ABBAS:  Well, I'm --

17             THE COURT:  This is from February?  This is part of my

18   worry, Mr. Abbas, is that you are litigating remotely, not

19   following dockets, just sort of tossing in motions and actions

20   that have no clear thought and no merit.  You're causing other

21   people to incur a lot of expenses.  You are causing courts to

22   waste a lot of time and it's all because, frankly, you don't

23   much care about that or maybe that's your purpose.  But in the

24   mean time you are just sort of doing your thing some place

25   else.  You've now had three courts threaten to sanction you for

1    your conduct.  Do you think that we've all just got it wrong

2    and you are just a hapless victim of a misunderstanding?  You

3    are you not seeing a pattern emerging here that three courts

4    have considered what you are filing to be meritless?

5              MR. ABBAS:  If I may respond, your Honor?

6              THE COURT:  Yes, you may respond.  Could you move the

7    microphone closer to you.

8              MR. ABBAS:  Your Honor, there's a lot of issues in

9    your question and in some of the issues that Ms. Maco brought

10   up.  I felt this was a Rule 11 hearing with respect to the

11   complaint, the tortious interference but I will go back to the

12   beginning.

13             THE COURT:  Well, it is that.  And so the question is

14   what is it going to take to deter you from filing frivolous

15   motions and actions?  And so Ms. Maco now brings to my

16   attention an action that you brought in the state which is just

17   a rehash, it seems to me on my brief review, of the prior

18   action here in federal court.  And the state judge has reached

19   the same conclusion that the Second Circuit did and that I now

20   have or at least that I warned which is that this is frivolous.

21   So, what's going on?

22             MR. ABBAS:  No, Judge Braun in the state court did not

23   say that it was frivolous.  Judge Braun simply ruled that the

24   forum clause applied and that it should be transferred to

25   Belgium and they had specifically requested sanctions for

1  filing frivolous claims.  But Judge Brown said it was well

2  argued and we presented the UCC argument and we presented the

3  law on bank checks which supported the payments on the checks

4  and --

5           THE COURT:  Well, this is the judge said in that case.

6           In this case the numerous duplicative, senseless,

7  confusing and sometimes illogical motions interposed by the

8  petitioners warrant a finding that the conduct engaged in by

9  petitioners was undertaken primarily to delay the resolution of

10  the underlying action and to harass and/or maliciously injure

11  the respondents herein.

12           That's a quote from Hershowitz.  She's basically

13  saying that's what went on in your case, right?

14           MR. ABBAS:  Your Honor, you know I was at the hearing

15  when Judge Braun made the decision on the forum clause issue

16  and on the summary judgment issue in lieu of complaint which

17  applies to bank checks and to monetary instruments.  The case

18  here that was filed here was on a negotiable instrument,

19  monetary instrument which I received a payment for my fees and

20  I filed a pro se action.  At the beginning of the case I was

21  representing myself and I was representing pro hac vice

22  Midamines SPR Limited which is the Illinois Corp.  And Handler

23  Thayer that was in 2012.  Steven Thayer and Thomas Handler had

24  nothing to do with the case.  I became counselor with Tom

25  Handler and Steve Thayer in 2014.  And therefore, when the

1    sanctions order came from the Second Circuit on that motion to

2    disqualify, OK, it addressed the appellant which was myself and

3    Midamines SPR Limited which is an Illinois Corp and I didn't

4    fully understand why the Illinois Corp was being sanctioned and

5    I wasn't aware of the actual sanction standard in that order of

6    the Second Circuit.  It just said vexatious, frivolous and you

7    have to pay reasonable attorney's fees.

8           Now there was no obligation on Steve Thayer or Thomas

9    Handler to pay any fees.  They misused that order of the Second

10   Circuit which never authorized them to contact my colleagues in

11   Illinois and threaten them.  You referred to one e-mail.  But

12   that one e-mail, your Honor, was the kiss of death for my

13   relationship with Tom Handler and Steve Thayer because as soon

14   as they received that e-mail, the next day my relationship with

15   them was terminated and my bio on the website was taken off.

16   And I established because we had a --

17          THE COURT:  You are sort of rearguing the merits of

18   this.  You don't intend to answer the question, right?  So, do

19   you intend to file more actions and more motions in this or any

20   of the related cases that have been filed to date, yes or no?

21   Do you intend to sort of keep this going?

22          MR. ABBAS:  Your Honor, my intention is simply to get

23   my checks paid and to recover my money.  I don't think I'm

24   being frivolous or meritless in trying to recoup money that KBC

25   has held since 2012.  No, your Honor, this money has been

1    sitting in New York --

2              THE COURT:  There was an arbitration that was supposed

3    to cover that, right?

4              MR. ABBAS:  No, your Honor, there was no arbitration.

5    There were initially two banks, your Honor, if I can explain

6    the background please.  First, there was an account in a bank.

7              THE COURT:  Again, I think you're arguing -- you are

8    trying to reargue the merits of things and I'm just trying to

9    figure out what is the likelihood of continued vexatious

10   litigation, which I'm not the first person to say that.  That's

11   what the Second Circuit characterized your litigation tactics

12   as and that's what the judge in New York state who is Judge

13   Braun said at end of his decision.

14             Plaintiff should be mindful of the fact they've

15   already been warned in federal court and should take this as

16   notice of the possibility that if another meritless case with

17   meritless claims which rise to the level of frivolity are

18   asserted in another action or in another further motion, the

19   plaintiffs could be subjected to sanctions at that point.  So

20   that's the judge finding a meritless case with meritless

21   claims.

22             MR. ABBAS:  Well, your Honor, I understand that this

23   Court and the Second Circuit and the state court said that the

24   claim was frivolous or meritless.  I respectfully disagree with

25   that, your Honor.  With all due deference to the Court because

G4CAAABBC                    Conference

1    my money has been here in New York for four years and they

2    don't have any right to keep that money or to possess that

3    money.  Now we're going to file, you're asking about future

4    litigation.

5              THE COURT:  Yes.

6              MR. ABBAS:  My intention was to file it in Belgium

7    now.  Your Honor said it should be filed in Belgium although

8    the forum clause itself didn't specify Belgium.  It specified

9    particular province in a particular bank.  There was no banking

10   relationship with KBC.  We have no contract with KBC.  We have

11   no bank account with KBC.

12             THE COURT:  So I got it wrong.  The circuit got it

13   wrong.  Are you rearguing that?

14             MR. ABBAS:  No.

15             THE COURT:  You are just rearguing these things over

16   and over.  It's sort of like dealing with a child.

17             MR. ABBAS:  No, your Honor.

18             THE COURT:  No, it is because I have children, so I

19   understand how it works.  But none of that changes anything,

20   OK?  I ruled.  The Circuit affirmed.  The Circuit sanctioned

21   you for frivolous and vexatious motions.  They sent it to me to

22   determine what that amount would be.  You then turn around and

23   come back with a new action against the lawyers designed, as

24   I've already found, really just to stick it to them, just to

25   make life difficult and so I've already ruled on merits of

G4CAAABBC                    Conference

1    that.  I do think it was meritless.  I think it was designed

2    just to antagonize an adversary who beat you in the district

3    court and the circuit and I don't think there is any good faith

4    basis for making the claims that you've made.  So I've ruled on

5    that.  The real issue is, are you going to keep doing this?

6    And I think the answer is "yes".  I think you said, yes, you do

7    intend to do this.

8              MR. ABBAS:  No.  I said, you Honor, that you

9    transferred the case to Belgium and that we are going to

10   pursue --

11             THE COURT:  So why did you go to New York state court?

12             MR. ABBAS:  Well, the state court because I had the --

13   there was a law which allowed accelerated payment of checks

14   rather than going and spinning our wheels for four years in a

15   Belgium court.

16             THE COURT:  It was better to spin Justice Braun's

17   wheels in a case which he characterizes as meritless and with

18   meritless claims?

19             MR. ABBAS:  He didn't say that, I don't think so.

20             THE COURT:  He didn't say that?  I've just quoted it

21   had.

22             MR. ABBAS:  At least not to me personally when I was

23   in court with him.  He said Mr. Abbas did not file frivolous

24   motions in this court.

25             THE COURT:  This is the transcript.  Maybe it's been

G4CAAABBC                    Conference

1    doctored.  Are you accusing them of doctoring this?  It says

2    that you were there.  This is the date I'm looking at February

3    5.  The proceedings are transcribed.  And in it I quoted the

4    language from this case which was Hershowitz v. Thompkins which

5    the Court quoted.  And it's not set out in quotation, so the

6    transcript is a little confusing but that's at page ten.  And

7    then on page 12 the judge makes it clear that he is not going

8    to sanction you at that time but he puts you on notice that if

9    another meritless case with meritless claims is asserted in

10   another action or in any further motion plaintiff could be

11   subjected to sanctions.  So, clearly Justice Braun was no more

12   impressed with the arguments than I or the Second Circuit have

13   been.  So, why were you in state court?

14              MR. ABBAS:  As I explained, your Honor, there's a law

15   for accelerated judgment of payment of monetary instruments.

16   So, it's a summary judgment motion in lieu of complaint.  We

17   filed one motion and they filed their response about the forum

18   clause and the judge ruled that the forum clause applied and

19   that was the end of the matter.  He didn't look at the UCC

20   violations of New York because if you recall, your Honor --

21              THE COURT:  Right.  That made it a meritless claim.

22              MR. ABBAS:  Your Honor, I mean I understand that this

23   word "meritless" and "vexatious" has been used in all these

24   documents but the fact remains, your Honor, that they are

25   holding money that does not belong to them and I received those

1    checks.  Those checks are still not paid.  So it's not

2    frivolous when somebody is looking to recover their fees.

3            THE COURT:  It's frivolous when you go to the wrong

4    court.  It's frivolous when you attempt to short circuit the

5    procedures that were already agreed to or already set forth

6    under the law or in a court's opinion which has been affirmed.

7    So that's the problem.  You have a tendency to sort of want to

8    do things your way.  So are you contemplating any further

9    actions in United States regarding these checks?

10           MR. ABBAS:  No, your Honor.  I'm contemplating to

11   start the case in Belgium for payment of the bank checks.

12           THE COURT:  Okay.  Let's stop there.

13           Ms. Maco, so one of the things I'm supposed to

14   consider is the likelihood of continued filings.  And so

15   Mr. Abbas has said that he's not intending to file any more

16   actions in the United States.  Do you not believe him?

17           MS. MACO:  Well, your Honor, up to that point -- since

18   the time that your Honor issued the March 16 order that brings

19   us here today, the Court was considering and likely to issue

20   sanctions.  Mr. Abbas has filed additional filings on motions

21   for reconsideration of the Court's ruling that the fees were

22   reasonable which was denied and has appealed both that order

23   and the order in this case to the Second Circuit.

24           THE COURT:  Well, I'm not sure that a filing

25   injunction and sanctions can prevent somebody from appealing.

14

1    I think he's got a right to appeal.  But are you concerned that

2    there will be other actions regardless of how that appeal goes

3    that will have you popping up in courtrooms all over the

4    country?

5          MS. MACO:  Yes, your Honor.  Certainly, he has a right

6    to appeal but he seems to have no intent to stop litigating

7    these matters.  It seems to just be a continuous campaign of

8    litigation here and I have absolutely no reason to think that

9    he wouldn't file actions elsewhere.

10         THE COURT:  He is talking about filing an action in

11   Belgium.

12         MS. MACO:  Yes, your Honor.

13         THE COURT:  You are not objecting to that or are you?

14         MS. MACO:  No, your Honor.  As we've argued in

15   underlying Midamines action we think that Belgium is the

16   appropriate place.  We think this claim is meritless but if he

17   brings it in the appropriate forum we'll obviously address it.

18   We have no reason to think that he won't continue to file

19   additional actions under other index numbers, perhaps, in this

20   court, go to other jurisdictions.

21         THE COURT:  He just said that he is not going to do

22   that.  You don't believe him?

23         MS. MACO:  Respectfully, your Honor, we have no reason

24   to think that he will stop his campaign.

25         THE COURT:  And then one of the considerations or

G4CAAABBC                  Conference

 1    monetary sanctions as a deterrent and the calculation of

 2    monetary sanctions can include or at least requires

 3    consideration of what counsels spend so far.  Now that's the

 4    not the only consideration but it is a consideration.  So how

 5    much has your firm spent so far in litigating this action?

 6         MS. MACO:  In this particular action, I don't have

 7    those figures at my disposal at the moment but I'm certainly

 8    willing to make a submission and indicate how much we've spent

 9    on this action to date.

10         THE COURT:  OK.  One of the points that Mr. Abbas has

11    made is that he doesn't have the wherewithal to pay sanctions

12    which is a consideration.  So what's your response to that?

13         MS. MACO:  Well, my response to that is that I think

14    that Mr. Abbas' representations that he doesn't have the

15    ability to pay should not necessarily make him immune from

16    potential sanctions that might be at issue.  Otherwise, he may

17    have no --

18         THE COURT:  Well, a filing sanction will prevent an

19    indigent litigate from just clogging the courts and wasting

20    everyone's time.  That's what it's there for.  Monetary

21    sanctions are designed to effectively deter the same kind of

22    conduct and they're not likely to be useful against somebody

23    who's indigent.  And so do you have any knowledge or any reason

24    to doubt the state of Mr. Abbas' financial affairs.

25         MS. MACO:  We have no insight into Mr. Abbas'

1    financial affairs.  I know that he seems to be pursuing

2    litigation here, although, he lives abroad and coming back and

3    forth for court hearings and such.  So I have no specific

4    information about his financial situation.  I would say that I

5    think that leave to file sanctions are of foremost concern or

6    foremost priority for us.  This campaign has just go on far too

7    long and I think it's time to be stopped.

8           THE COURT:  OK.  Mr. Abbas, tell me about the state of

9    your finances.  You have claimed that you don't have the

10   ability to even pay the sanctions that were ordered by the

11   Second Circuit and I made the finding of the dollar amount but

12   they're the ones who contemplated that you should have to pay

13   it.  So what does it say to your finances right now?

14          MR. ABBAS:  Well, your Honor, I don't have the money.

15   You ordered me to pay 70,000.  That's impossible.  I don't have

16   that kind of money at all.  And I would like to respond to a

17   few of the points that were raised.

18          THE COURT:  I think you are going to need to more than

19   just say, "I don't have the money".  I think you are probably

20   going to have to submit a declaration and indicate what sort of

21   assets you do have because you're the one who is asserting that

22   you're unable to pay any sanctions.

23          MR. ABBAS:  Yeah, your Honor, that is right.

24          THE COURT:  You are flying back and forth between

25   continents litigating in multiple form.

G4CAAABBC                    Conference

1          MR. ABBAS:  Well, your Honor, thank good for my mother

2     because she is helping me out and that's truth.  I have to

3     borrow money from her to come here.  And the fact is that in

4     Beirut we have a house.  I'm with my mom and dad and we have --

5     so, as I explained to your Honor I continue in my legal

6     education in Beirut.  I registered at university there and it's

7     a Lebanese university.  I'm taking law courses in Arabic and

8     trying to register for the Beirut bar.  So the financial

9     aspect, honestly, your Honor, I don't have the money.  I can't

10    pay it.

11          And I also appealed it because I feel it is

12    unreasonable, your Honor, because they overstaffed the motion.

13    I'm one lawyer.  I prepared that motion to disqualify.  They

14    could have had one lawyer prepare the response.  They didn't

15    need five lawyers conferencing with each other for I don't know

16    how much it was exactly.  So I think it was overbilled and over

17    litigate and that is why I appealed the decision, your Honor.

18          And with respect to this Rule 11, you are talking

19    about the deterrence factors, the Rule 11 as you said is to

20    deter frivolous litigation, not to impose monetary sanctions

21    that are --

22          THE COURT:  Right.  I just said that.

23          MR. ABBAS:  And I think with the element of cause of

24    action if we go to the tortious interference element --

25          THE COURT:  This is rearguing the merits again, so.

G4CAAABBC                    Conference

1        MR. ABBAS:  But I just want to say, your Honor, I know

2   you disagree with me with some the elements you know but I

3   alleged the elements.  I alleged there was a relationship that

4   was interfered with.

5        THE COURT:  You don't have to allege.  You have to

6   plausibly allege.

7        MR. ABBAS:  And plausibly, of course, no one likes to

8   be sued.  When Tom Handler and no one like to be threatened

9   with law suit.  When Tom Handler received and e-mail saying

10  that Mr. Abbas doesn't pay, we are going to look to you to pay,

11  the follow-up e-mail says when I asked, please, don't send any

12  more e-mails.  He said, no, I will decide how to collect.  So

13  he wanted to collect against Tom and Steve.  So, of course,

14  when they heard those things they didn't want to be financially

15  responsible for sanctions or for having problems with the

16  lawsuit.  Of course they decided to terminate the relationship.

17  So that's why I understand you disagreed and you said --

18        THE COURT:  I've ruled on this.  OK?

19        MR. ABBAS:  But I just want to say, your Honor, that I

20  pleaded all the elements of the cause of action and they were

21  supported by facts.  I even mentioned a church v. Liberty case

22  which has the four elements.

23        THE COURT:  There is no question of what the elements

24  are.  The issue is on the facts that you allege could a

25  reasonable fact finder conclude that you had a cause of action

1   here?  And the answer I felt was resoundingly "no".  I've ruled

2   and so you can appeal that.  I don't think a filing sanction

3   can prevent you from appealing.  No one's arguing otherwise.

4   But I don't think there's any point in rearguing the motion now

5   when I've ruled on the motion.

6           We're here for a different purpose and that is, what

7   is it going to take to stop you from filing frivolous lawsuits

8   and frivolous motions?  Frivolous motions that the Second

9   Circuit found to be vexatious and that an action that although

10  the State Supreme Court didn't sanction you, put you on notice

11  that continued actions of that kind were going to resolve,

12  potentially result in sanctions?  So I don't think the message

13  is getting through.

14          MR. ABBAS:  Your Honor, I understand you ruled on it.

15  It was a 12(b)(6) motion to dismiss.  My only point is that

16  even though the 12(b)(6) motion was granted doesn't necessarily

17  mean sanctions are appropriate is what my point is, your Honor.

18          And I want to say with respect to this Belgium

19  litigation, she says I have no idea, she's speculating he might

20  file cases all over the United States in every single district

21  court.  A few weeks ago when I was in Belgium or a month ago I

22  sent to Ms. Maco a request because there's a financial

23  ombudsman in Belgium that assists parties in dealing with banks

24          THE COURT:  I understand.

25          MR. ABBAS:  So I wrote a letter to the ombudsman to

1    see if this matter could be settled that KBC has been holding

2    money in New York for four years and in Brussels for four years

3    that doesn't belong to hem.  So I asked the ombudsman to

4    intervene and I asked Ms. Maco, can you please let me know who

5    are the attorneys for the KBC in Brussels that I can

6    communicate with.  She never answered me.  No response,

7    whatsoever.

8            So KBC did not want to proceed with any potential

9    resolution of the case in Belgium.  So that's why I'm

10   contemplating to start the case there not in the United States.

11   I got the message from your Honor and from the state court that

12   they don't want to hear that claim on checks that it should be

13   in Belgium.

14           THE COURT:  But the Second Circuit weighed in on this

15   too.

16           MR. ABBAS:  On the Second Circuit, your Honor, with

17   the motion to disqualify -- I just want to clarify one point,

18   your Honor.  I was trying to alert the Second Circuit about an

19   e-mail that I received.  They say it was inadvertent.  I don't

20   know if it was or not but they said it was inadvertent where

21   Mr -- so I filed a motion to disqualify to alert the court that

22   this is it.

23           THE COURT:  The Second Circuit affirmed my ruling with

24   respect to the checks, right?

25           MR. ABBAS:  The Second Circuit affirmed the ruling

G4CAAABBC                    Conference

1    with respect to the forum clause.  You never decided on the

2    merits of the checks.

3              THE COURT:  No, no.  Of course, I didn't decide on the

4    merits of the checks.

5              MR. ABBAS:  It was just a procedural question.

6              THE COURT:  The point is, it was appeal to the Second

7    Circuit.  It was affirmed.  In the course of that appeal you

8    made motions that the Second Circuit found to be frivolous and

9    vexatious and they ordered you to pay the costs associated with

10   that.

11             So anyway we're kind of just rehashing here.  I would

12   like I guess submissions from Mr. Abbas as to his financial

13   circumstances and his ability to pay the sanction, the monetary

14   sanction.

15             and I would like a statement of what has been spent by

16   the defendants here in litigating this action, not the other

17   stuff, just this action.  That I think is relevant to a

18   determination as to whether monetary sanctions are appropriate.

19             With respect to filing sanctions, I'm going to reserve

20   on that and decide whether it's appropriate in light of what

21   was said here today.  OK?

22             All right.  Thank you.  Anything else we should cover?

23   Let's have those within two weeks.  OK?  I'd like those

24   submissions.  So you have a declaration of your financial

25   circumstances and the same two weeks for defendants to make a

G4CAAABBC                    Conference

1   declaration with exhibits if necessary about what has been

2   spent on this case.

3           If some portion of this is something that should be

4   filed under seal you can make that request.  There's a

5   presumption of open records but that presumption can be

6   overcome where it involves financial privacy and things like

7   that.  So if you wish to make a filing under seal or redacted,

8   in a redacted form just make that request, citing to the

9   relevant case law.  The key case is I guess the Lugosch case,

10  L-U-G-O-S-C-H, OK?

11          So two weeks from today puts us at April 26, OK?  So

12  the 26th of April, is that all right?

13          You can do that, Mr. Abbas?

14          MR. ABBAS:  Yes, your Honor.

15          THE COURT:  OK.  All right.  So if anyone needs a copy

16  of this transcript they can take that up with the court

17  reporter.  I have to run now, but thanks.  Have a good day.

18                    (Adjourned)

19

20

21

22

23

24

25